UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WILLIAM BLAKLEY on behalf of himself and those similarly situated, HELEN BLAKLEY on behalf of herself and those similarly situated, and KIMBERLY SMITH on behalf of herself and those similarly situated, | ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) No. 1:16-cv-00351-LJM-TAB |
| CELADON GROUP, INC., CELADON TRUCKING SERVICES, INC., QUALITY COMPANIES, LLC, QUALITY EQUIPMENT LEASING, LLC, and JOHN DOES 1-10, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**ORDER ON MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

This matter pends on the Defendants', Celadon Group, Inc., Celadon Trucking Services, Inc., Quality Companies, Inc., and Quality Equipment Leasing, Inc. (collectively, "Celadon"), Motion for Partial Judgment on the Pleadings, pursuant to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)"). Dkt. No. 41. In its Motion, Celadon seeks to dismiss Counts IV, V, and VI of Plaintiffs', William Blakley, Helen Blakely and Kimberly Smith, on behalf of themselves and all others similarly situated (collectively, "Plaintiffs'"), First Amended Individual, Collective, and Class Action Civil Complaint (the "Complaint"). Dkt. No. 41. Celadon asserts that (1) certain payments made by Celadon to Plaintiffs are not subject to the Indiana Consumer Loans Act (Ind. Code § 24.4.5-3-101 *et seq.*), and the Indiana Small Loans Act (Ind. Code § 24-4.5-7-101 *et seq.*), largely because the

payments are advances, rather than "loans"; and (2) Celadon cannot be subject to the Indiana Wage Assignment Act (Ind. Code § 22-2-7-1 *et seq.*), if it is considered the Plaintiffs' employer, as Plaintiffs allege in the Complaint.  *See generally*, Dkt. No. 42.

## I. **BACKGROUND**

Plaintiffs each entered into a written Contractor Operating Agreement (the "Agreement") with Celadon to work as commercial truck drivers.[1] Dkt. No. 21, ¶¶ 40-43, 47-48; *see also,* Dkt. No. 24, Ex. A & B.  Under the terms of Agreement, Plaintiffs agreed "that [their] compensation for services…may be withheld by [Celadon] for payment of, and [Celadon] may set off against [their] compensation for" various charges and expenses that may be incurred during the duration of the Agreement, including "[a]dvances and other extensions of credit by [Celadon] to [Plaintiffs]."  Agreement, at § 5.05.  Plaintiffs were also required to maintain an escrow account under the Agreement and authorized Celadon, in its discretion, "to apply all or any portion of [Plaintiffs'] Escrow Account to the payment of any charges or indebtedness" incurred during the term of the Agreement.  *Id*. at §10.04.  The amounts remaining in the Plaintiffs' escrow accounts upon termination of the Agreement were returned to Plaintiffs.  *Id*. at §§ 10.05, 10.06.

While working under the Agreement, Plaintiffs regularly received "payroll and other advances" from Celadon for amounts between $50 and $550, in exchange for service fees ranging from $3.50 to $7.50 for each advance.  Dkt. No. 21, ¶¶ 98, 120-121.  The amount of each advance, including the associated service fee, was deducted from the

---

[1] In the Complaint, Plaintiffs assert that they were "employees" of Celadon, rather than independent contractors.  Dkt. No. 21, ¶¶ 46-70.  Although Celadon generally denies that the Plaintiffs were its "employees," it has assumed that Plaintiffs' allegations regarding their employment status are true for the purposes of its Motion for Partial Judgment on the Pleadings.  Dkt. No. 42, fn. 1.

Plaintiffs' paychecks.[2]  Dkt. No. 21, ¶ 100.  Plaintiffs assert that Celadon also secured repayment of the advances by requiring Plaintiffs to allow Celadon to make debits from Plaintiffs' escrow accounts.  *Id.* at, ¶¶ 101, 104.  Plaintiffs further allege that Celadon made unlawful deductions from the Plaintiffs' paychecks, "including but not limited to deductions for lease payments, fuel, trailer lock, glad hand lock, tolls, Qualcomm maintenance fees, air cuff lock, truck repairs, and other miscellaneous fees."  *Id.* at ¶¶ 76-77.

In the Complaint, Plaintiffs claim that advances Celadon made to Plaintiffs constitute loans in violation of the Indiana Small Loans Act and Indiana Consumer Loan Act because Celadon deducted the advances and service fees from Plaintiffs' paychecks and secured repayment of the advances with the ability to debit Plaintiffs' escrow accounts.  *Id.* at ¶¶ 97-130, 160-165.  Plaintiffs further assert that Celadon's deductions for items, such as "lease payments, fuel purchases, insurance purchases, and payroll advances," constitute wage assignments that violate the Indiana Wage Assignment Act by including transaction fees in excess of the permissible 8% rate and by securing agreements for assignments exceeding thirty days.  *Id.* at ¶¶ 131-139, 166-168.

## II. **STANDARD**

The Court decides motions brought under Rule 12(c) by the same standard as that for a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").  *See R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 (7th Cir. 2003).  The Court may consider only the

---

[2] Plaintiffs use the terms "paychecks" and "settlements" interchangeably in the Complaint to refer to the amounts to be periodically paid by Celadon to Plaintiffs. *See* Dkt. No. 21, at ¶¶ 76-77, 100.

pleadings and must view the allegations in the light most favorable to the non-moving party.  *See id.*  The pleadings include the complaint, the answers, and any documents attached thereto as exhibits.  *See N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452-53 (7th Cir. 1998); *Wright v. Assoc'd. Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (stating that "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim").  The Court may also take judicial notice of matters of public record and not subject to reasonable dispute.  *See Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012) (citations omitted).  Furthermore, "[a] judgment on the pleadings is proper when only questions of law, and not questions of fact, exist after the pleadings have been filed."  *All Am. Ins. Co. v. Broeren Russo Const., Inc.*, 112 F. Supp. 2d 723, 728 (C.D. Ill. 2000).

Generally, the Court will presume the facts as alleged by the Plaintiffs to be true, but it is not bound by the Plaintiffs' legal characterization of facts.  *See Nat'l Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987).  Under Rule 12(b)(6), the Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of Plaintiff.  *See Esekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995).

Under the Supreme Court's directive in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to survive a motion to dismiss for failure to state a claim upon which relief may be granted, a plaintiff must provide the grounds for his entitlement to relief with more than labels, conclusions or a formulaic recitation of the elements of a cause of action.  *Id.* at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  The "allegations must be enough to raise a right to relief above the speculative level."  *Id.*  The touchstone is whether the Complaint gives the defendant "fair notice of what the … claim is and the

grounds upon which it rests." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Legal conclusions or conclusory allegations are insufficient to state a claim for relief. *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011).

### III. COUNTS IV AND V—VIOLATIONS OF THE INDIANA SMALL LOANS ACT AND INDIANA CONSUMER LOAN ACT

In Counts IV and V of their Complaint, Plaintiffs allege that the advances provided by Celadon constitute loans in violation of the Indiana Small Loans Act and Indiana Consumer Loan Act, respectively. Celadon argues that it cannot be liable under these Acts largely because the amounts paid to Plaintiffs were advances; therefore, they do not meet the definitions for "loans" under Indiana Consumer Loan Act or "small loans" under the Indiana Small Loans Act. *See* Ind. Code § 24-4.5-7-104; Ind. Code § 24-4.5-3-106.

The Indiana Consumer Loan Act defines a "loan" to include (1) a debt created "by the lender's payment of or agreement to pay money to the debtor" or to a third party on the debtor's behalf, (2) a debt created "by a credit to an account with the lender upon which the debtor is entitled to draw immediately," (3) a debt created "pursuant to a lender credit card or similar arrangement," and (4) "the forbearance of debt arising from a loan." Ind. Code § 24-4.5-3-106. The definition of a "loan" within the Indiana Consumer Loan Act also applies to the Indiana Small Loans Act. Ind. Code § 24-4.5-7-102(1) ("Except as otherwise provided, all provisions of this article applying to consumer loans…apply to small loans, as defined in this chapter."). Under the Indiana Small Loans Act, a "small loan" is defined as a loan (a) with a principal loan amount between $50 and $550; and (b) "in which the lender holds the borrower's check for a specific period, or receives the borrower's written authorization to debit the borrower's account … under an agreement,

either express or implied, for a specific period" before the lender attempts to deposit or present the check or debits the borrower's account. Ind. Code § 24-4.5-7-104(1).

The Court concludes that Plaintiffs have not sufficiently alleged facts to support finding Celadon's payments meet the statutory definition of a "loan." The definition of a "loan" provided by Ind. Code § 24-4.5-3-106 implies that a debt must be created in order for a loan to exist. The Plaintiffs alleged that Celadon reduced Plaintiffs' paychecks by the amounts they advanced to Plaintiffs, Dkt. No. 21, ¶ 100, but, even in the light most favorable to Plaintiffs, their allegations fail to establish that the advances created any kind of debt to meet the definition of a "loan." Therefore, because Plaintiffs do not sufficiently allege the existence of a "loan," the Court dismisses Counts IV and V of the Complaint without prejudice.

### IV. COUNT VI—VIOLATIONS OF THE INDIANA WAGE ASSIGNMENT ACT

Plaintiffs allege that Celadon secured wage assignments through the Agreement that violate the Indiana Wage Assignment Act in Count VI of their Complaint. Specifically, Plaintiffs claim that Celadon "secured agreements [for wage assignments] that exceeded thirty days in length," *Id.* at ¶ 137, and that the service fees charged by Celadon exceeded the 8% per year compensation and interest rate permitted for wage assignments. *Id.* at ¶¶ 134-135. However, Celadon argues that the Indiana Wage Assignment Act cannot apply if Celadon is deemed Plaintiffs' employer, as Plaintiffs allege in their Complaint, because the Indiana Wage Assignment Act is not applicable to employers. Dkt. No. 42 at 13-15. In response, Plaintiffs claim that employers are not completely excluded from applicability of the Indiana Wage Assignment Act and that their claims under the Indiana Wage Assignment Act in Count VI were pled "in the alternative to their Wage Deduction

Act claims, in the event that some or all of [Celadon is] found to not be [the employer] of Plaintiffs." Dkt. No. 43 at 16-17.

An assignment of wages is defined as "[a]ny direction given by an employee to an employer to make a deduction from the wages to be earned by said employee, after said direction is given." Ind. Code § 22-2-6-1(a). The Indiana Wage Assignment Act also defines a "wage broker" as "[a]ny person, company, corporation, limited liability company, or association loaning money directly or indirectly to any employee or wage earner, *except* the employer of the employee, upon the security of or in consideration of any assignment of the wages or salary of such employee or wage earner." Ind. Code § 22-2-7-1(a).

Under Section 2 of the Indiana Wage Assignment Act ("Section 2"),

> [n]o assignment of his or her wages or salary by any employee or wage earner to any wage broker *or* any other person for his benefit shall be valid or enforceable, nor shall any employer or debtor recognize or honor such assignment for any purpose whatever, unless it be for a fixed and definite part of the wages or salary earned or to be earned during a period not exceeding thirty (30) days immediately following the date of the assignment.

Ind. Code § 22-2-7-2. Additionally, Section 3 of the Indiana Wage Assignment Act ("Section 3") states that no wage broker can ask for, demand, or receive any compensation or interest exceeding 8% per year for money he advances or loans to any employee or wage earner. Ind. Code § 22-2-7-3.

While Celadon argues that employers are not subject to the provisions of Section 2, nothing in the statute demonstrates that wage assignments to employers should be excluded from its application. Celadon argues that Section 2 should not apply to employers because employers are excluded from the definition of "wage broker" and are separately referenced in the next phrase of the statute; but neither of these reasons

7

preclude applying Section 2 to employers. The specific reference to employers in Section 2, to address whether an employer may honor an assignment, in no way affects the meaning of the preceding phrase, referring to the validity of assignments to "wage brokers or any other person." Ind. Code § 22-2-7-2. If the Indiana General Assembly intended to exclude employers under Section 2, it could have explicitly done so within the statute, just as it did when defining "wage brokers." *See* Ind. Code § 22-2-7-1(a). However, since the Indiana General Assembly did not make such an exclusion, employers must also comply with the provisions of Section 2.

Even though Section 2 can apply to employers, Plaintiffs still failed to plead sufficient facts to adequately state a claim under Section 2. Section 2 states that a wage or salary assignment can only be valid if its either (1) made "for a fixed and definite part of the wages or salary earned" or (2) "earned during a period not exceeding thirty (30) days immediately following the date of the assignment." Ind. Code § 22-2-7-2. Although Plaintiffs allege that Celadon "secured agreements that exceeded thirty days in length," Dkt. No. 21, ¶ 137, they make no reference to the fixed and definite nature of the wages or salary earned by Plaintiffs in the Complaint. Because Plaintiffs fail to address the fixed and definite nature of the wages or salary earned, this Court concludes that the Complaint does not allege sufficient facts to determine that any wage assignments made by Celadon were invalid under Section 2.

In reference to Section 3, Plaintiffs also allege that Celadon charged transactional fees that exceeded the permissible 8% compensation and interest rate for wage assignments. Dkt. No. 21, at ¶ 134-135. Unlike Section 2, which applies to wage brokers and "any other person[s]," Ind. Code § 22-2-7-2, Section 3 applies only to wage brokers,

who by definition cannot be employers.  Ind. Code § 22-2-7-3; Ind. Code § 22-2-7-1(a). Although Plaintiffs asserted in their Brief in Opposition that their claims under the Indiana Wage Assignment Act were plead in the alternative to their claims under the Indiana Wage Deduction Act (Count II), Dkt. No. 43 at 16-17, Plaintiffs in no way explain or identify such an alternative argument in their Complaint.  Because Plaintiffs allege that Celadon was the Plaintiffs' employer throughout the Complaint and because Section 3 cannot apply to employers, Celadon cannot be found liable under Section 3 unless Plaintiffs properly plead their claims in the alternative.

Because Plaintiffs fail to allege sufficient facts to find liability under Section 2 and to clearly plead their claims under the Indiana Wage Assignment Act in the alternative to ensure that Section 3 could apply to Celadon, Plaintiffs failed to adequately state a claim against Celadon for which relief can be granted in Count VI of their Complaint.  Therefore, the Court dismisses Count VI without prejudice.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Celadon's Motion for Partial Judgment on the Pleadings, **without prejudice**.  The Court further **GRANTS** Plaintiffs leave to amend their complaint within fourteen days from the date of this order.

IT IS SO ORDERED this 2d day of December, 2016.

Distribution attached.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Adam Eakman
SCOPELITIS GARVIN LIGHT HANSON & FEARY PC
aeakman@scopelitis.com

Braden Kenneth Core
SCOPELITIS GARVIN LIGHT HANSON & FEARY PC
bcore@scopelitis.com

Christopher J. Eckhart
SCOPELITIS GARVIN LIGHT HANSON & FEARY PC
ceckhart@scopelitis.com

Gregory M. Feary
SCOPELITIS GARVIN LIGHT HANSON & FEARY PC
gfeary@scopelitis.com

Justin L Swidler
SWARTZ SWIDLER
jswidler@swartz-legal.com

Matthew D. Miller
SWARTZ SWIDLER
mmiller@swartz-legal.com

Richard S. Swartz
SWARTZ SWIDLER LLC
rswartz@swartz-legal.com