UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WILLIAM BLAKLEY on behalf of himself and those similarly situated, HELEN BLAKLEY on behalf of herself and those similarly situated, and KIMBERLY SMITH on behalf of herself and those similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> CELADON GROUP, INC., CELADON TRUCKING SERVICES, INC., QUALITY COMPANIES, LLC, QUALITY EQUIPMENT LEASING, LLC, and JOHN DOES 1-10, <br><br> Defendants. | No. 1:16-cv-00351-LJM-TAB |

**ORDER**

This matter pends on the Court's *sua sponte* order for summary judgment briefing to address whether Plaintiffs, William Blakely, Helen Blakely, and Kimberly Smith, on behalf of themselves and all others similarly situated (collectively, "Plaintiffs"), have private rights of action under Section 2 ("Section 2") of the Indiana Wage Assignment Act (the "Assignment Act") and the Indiana Wage Deduction Act (the "Deduction Act"); and whether Plaintiffs have sustained damages as a result of Defendants', Celadon Group, Inc., Celadon Trucking Services, Inc., Quality Companies, Inc., and Quality Equipment Leasing, Inc. (collectively, "Celadon"), alleged violations of these statutes. Dkt. No. 101

at 12. For the reasons stated herein, the Court **GRANTS** summary judgment on these claims.

# I. BACKGROUND

The following facts have been adopted in large part from the Court's prior Order on Motion for Partial Summary Judgment (the "Prior Order"). Dkt. No. 101.

Plaintiffs William Blakely and Kimberly Smith, as well as many other commercial truck drivers (the "Contracting Drivers"),[1] each entered into a written Contractor Operating Agreement (the "Agreement"), Dkt. No. 88, Ex. B-3 at 11-28; Dkt. No. 88, Ex. B-4 at 14-31, through which Celadon sought to utilize vehicular equipment owned or leased by the Contracting Drivers to provide services in connection with its business. Agreement, § 1.03. The Contracting Drivers agreed "that [their] compensation for services…may be withheld by [Celadon] for payment of, and [Celadon] may set off against [their] compensation for" various charges and expenses that may be incurred during the duration of the Agreement, including "[a]dvances and other extensions of credit by [Celadon] to [the drivers]." *Id.* at § 5.05. The Agreement also stated that the Contracting Drivers were responsible for "[p]aying all operating costs and expenses incidental to the operation of [their vehicular equipment] including but not limited to" costs related to fuel, insurance, oil, tires, repairs, licenses, plates, and tolls. *Id.* at § 9.02(c). Furthermore, the Agreement required each Contracting Driver to maintain an escrow account and to authorize Celadon, in its discretion, "to apply all or any portion of [a Contracting Driver's] Escrow Account to the payment of any charges or indebtedness" incurred during the term

---

[1] Plaintiff Helen Blakely did not enter into a Contractor Operating Agreement with Celadon, Dkt. No. 79, Ex. 11 at 37:6-17, 38:4-11, and is therefore excluded from the definition of Contracting Drivers.

of the Agreement. *Id.* at §10.04. If a Contracting Driver was indebted to Celadon in an amount greater than that held in his escrow account, his indebtedness would be reduced by the amount available in his escrow account, and that Contracting Driver would be personally liable to Celadon for any remaining indebtedness. *Id.* at § 10.05. If any amounts remained in a Contracting Driver's escrow account after his Agreement was terminated, the remaining amounts would be returned to that driver. *Id.* at §§ 10.05, 10.06.

While working with Celadon, Plaintiffs regularly requested and received advances from Celadon for personal use and for costs associated with operating their vehicles, in exchange for one-time service fees ranging from $3.50 to $7.50 for each advance.[2] Dkt. No. 79, Ex. 26 ("Isaacs Dep."), 26:1-28:4, 33:22-40:16; Dkt. No. 88, Ex. A ("Isaacs Decl."), ¶¶ 7, 11. Celadon typically provides such requested advances to its drivers, including the Plaintiffs, by either loading the funds onto the drivers' fuel cards or by issuing an "express code" that would allow the drivers to obtain cash at truck stations. Isaacs Decl. ¶ 10; Isaacs Dep., 37:10-38:9. These advances, and their associated service fees, are generally "tied to the trip that [a driver is] on when he takes the advance" and are reflected as reductions on the driver's paycheck for that trip. Isaacs Dep., 65:7-66:14. *See also*, Isaacs Decl., ¶ 9. When the total amount due to a driver for a particular paycheck does not cover the entire amount already advanced to that driver, the remaining amount is reflected as a reduction on the driver's subsequent paychecks until the entire advanced amount can be accounted for. Isaacs Dep., 50:21-51:2; Isaacs Decl., ¶ 11. If a driver's

---

[2] Helen stated that she was still entitled to request advances too, despite not personally entering into the Agreement with Celadon. Dkt. No. 88-3, Ex. B-2 at 38:12-25.

Agreement is terminated after that driver received advances that have not yet been accounted for in the driver's paychecks, the remaining advanced amount would be deducted from the driver's escrow account before the remaining escrow account funds are returned to the driver. Isaacs Dep., 51:12-52:25; Isaacs Decl., ¶ 12. Celadon has not sought to recover any advanced amounts not otherwise covered by a driver's paychecks or escrow account by taking legal action, hiring collection agencies, or debiting a driver's checking account in at least five years. Isaacs Dep., 51:12-52:6; Isaacs Decl., ¶ 13.

In their Second Amended Complaint, Plaintiffs claimed that the advances made by Celadon pursuant to the Agreement constituted loans in violation of the Indiana Small Loans Act ("ISLA") and the Indiana Consumer Loan Act ("ICLA"). Dkt. No. 52, ¶¶ 97-138, 171-176. Plaintiffs further asserted that Celadon's deductions for items, such as "lease payments, fuel purchases, insurance purchases, and payroll advances," violated the Indiana Wage Payment Statute (the "Payment Statute"), Ind. Code §§ 22-2-5-1 *et seq.*, the Assignment Act, Ind. Code §§ 22-2-7-1 *et seq.*, and the Deduction Act, Ind. Code §§ 22-2-6-1 *et seq*. *Id.* at ¶¶ 139-150, 160-167, 177-181.

On January 12, 2017, Celadon filed its Motion for Partial Summary Judgment, requesting that the Court dismiss Plaintiffs' claims under the ISLA, the ICLA, and the Assignment Act. Dkt. No. 59.[3] In the Prior Order, the Court dismissed Plaintiffs' claims as to the ISLA and the ICLA entirely, as well as Plaintiffs' claims regarding violations of

---

[3] Celadon's Motion for Partial Summary Judgment was originally filed as a Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 59. On March 27, 2017, the Court converted Celadon's Motion to a Motion for Partial Summary Judgment, pursuant to Federal Rule of Civil Procedure 56. Dkt. No. 81.

Section 3 of the Assignment Act. Dkt. No. 101 at 9-11. The Court further requested *sua sponte* that the parties submit briefs specifically addressing the following questions: (1) whether any private right of action exists under Section 2; (2) if so, whether Plaintiffs suffered any damages from Celadon's alleged violations of Section 2; (3) whether any private right of action exists under the Deduction Act; and (4) if so, whether Plaintiffs suffered any harm from Celadon's alleged violations of the Deduction Act. *Id.* at 12.

With respect to the issues now before the Court, Plaintiffs argue that, even though neither the Assignment Act nor the Deduction Act expressly provide for a private right of action, such rights can be inferred. Dkt. No. 103 at 1. Specifically, Plaintiffs claim that private rights of action can be inferred because the Indiana General Assembly (the "Legislature") primarily intended for these statutes to benefit individuals, rather than the general public. *Id.* at 4, 6. Plaintiffs further assert that they have been damaged by Celadon's alleged violations of both Section 2 and the Deduction Act in the amounts Celadon deducted "from their due wages for lease payments, fuel, trailer locks, glad hand locks, tolls, Qualcomm use fees, air cuff locks, truck repairs, transactional fees, and other miscellaneous fees." *Id.* at 5-7.

In contrast, Celadon contends that neither Section 2 nor the Deduction Act expressly provide for a private right of action and that there is no indication that the Legislature intended for such rights to exist under these statutes. Dkt. No. 105 at 3-6. Celadon also claims that other enforcement mechanisms exist to protect the rights provided by Section 2 and the Deduction Act that do not require the Court to infer private rights of action in these statutes. *Id.* Moreover, Celadon argues that even if private rights of action did exist under Section 2 or the Deduction Act, Plaintiffs would not be entitled to

5

any damages because Plaintiffs have not suffered harm as a result of Celadon's alleged violations and because they already seek recovery of the same alleged damages under the Payment Statute. *Id.* at 7-11.

## II. <u>SUMMARY JUDGMENT STANDARD</u>

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990). Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, which provides in relevant part: "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials showing that a fact either is or cannot be genuinely disputed. Fed. R. Civ. P. 56(c)(1). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986); *Oliver v. Oshkosh Truck Corp.,* 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary

6

judgment; rather, the nonmoving party bears the responsibility of identifying applicable evidence. *See Bombard v. Ft. Wayne Newspapers, Inc.,* 92 F.3d 560, 562 (7th Cir. 1996).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm,* 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson,* 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.,* 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer,* 969 F.2d 278, 281 (7th Cir. 1992). If the moving party does not have the ultimate burden of proof on a claim, it is sufficient for the moving party to direct the Court to the lack of evidence as to an element of that claim. *See Green v. Whiteco Indus., Inc.,* 17 F.3d 199, 201 & n. 3 (7th Cir. 1994). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.,* 94 F.3d 1121, 1124 (7th Cir. 1996).

### III. <u>DISCUSSION</u>

"Whether a statute creates a private right of action is a question of law for the court." *Howard v. Reg'l Health Sys. v. Gordon*, 952 N.E.2d 182, 187 (Ind. 2011). A statutory private right of action may be established (1) through the explicit statutory

language or (2) by inference based on legislative intent. *See Kadambi v. Express Scripts, Inc.*, 86 F. Supp. 3d 900, 904 (N.D. Ind. 2015) (citing *Blanck v. Ind. Dep't of Corr.*, 829 N.E.3d 505, 509 (Ind. 2005)); *see also, Howard*, 952 N.E.2d at 187 ("Determining whether a civil cause of action exists begins with an examination of legislative intent."). When determining whether the Legislature intended for a statute to confer a private right of action, the Court must consider whether the statute (1) is "designed to protect the public in general," (2) "contains an enforcement provision," and (3) "already provides remedies for a violation of its duties." *Brown v. City of Valparaiso*, 67 N.E.3d 652, 660 (Ind. Ct. App. 2016) (citing *Howard*, 952 N.E.2d at 187; *Estate of Collup v. State of Indiana*, 821 N.E.2d 403, 408 (Ind. Ct. App. 2005)).

A private cause of action can "be inferred where a statute imposes a duty for a particular individual's benefit but will not be where the Legislature imposes a duty for the public's benefit." *Blanck*, 829 N.E.2d at 509. However, "Indiana courts have rarely concluded the Legislature intended to confer a private right of action." *Kadambi*, 86 F. Supp. 3d at 904 (internal quotations omitted). "'The fact that an individual suffers a distinct injury unique from the general public is not determinative,'" and a court should not infer a private right of action exists if the Legislature did not intend for one, despite any benefits that the statute may provide to individuals. *Doe v. Ind. Dep't of Child Serv.*, 53 N.E.3d 613, 616 (Ind. Ct. App. 2016) (quoting *Americanos v. State*, 728 N.E.2d 895, 897 (Ind. Ct. App. 2000), *trans. denied*).

### A. SECTION 2 OF THE ASSIGNMENT ACT

Although Plaintiffs contend that a civil, private right of action exists for violations of Section 2, the Court disagrees. The Assignment Act states that "[a] person who recklessly

violates [the Assignment Act] commits a Class B misdemeanor." Ind. Code § 22-2-7-7. Furthermore, the Assignment Act requires that "any assignment of wages or salary given to or received by any wage broker or any other person in violation of any of the provisions of [the Assignment Act] shall be null and void," and upon a conviction, "any and all moneys advanced or loaned … in violation of any of the provisions of [the Assignment Act] and all interest thereon shall be forfeited." Ind. Code § 22-2-7-8. However, the Assignment Act does not provide for any civil remedies for violations of the statute. "Although the absence of a provision expressly providing a private cause of action does not necessarily preclude one, it does indicate that the legislature did not intend to expand the remedy of [a criminal statute] beyond the criminal penalty." *Americanos*, 728 N.E.2d at 898. The Court concludes that the statutory language here does not support an inference that the Legislature intended to create a private right of action under the Assignment Act.

Even if a private right of action was implied in the Assignment Act, Plaintiffs would not be entitled to recover any damages from Celadon's alleged violation of Section 2. Plaintiffs claim that the deductions Celadon made from Plaintiffs' wages for advances to pay for lease payments, fuel, Qualcomm fees, interest, and other costs associated with their vehicle operations constituted assignments of wages in violation of Section 2. Dkt. No. 103 at 1; Dkt. No. 52, ¶¶ 139-150, 179. However, if such deductions were considered assignments that violated Section 2, the assignments would be deemed null and void, and Plaintiffs would be required to forfeit all of the amounts advanced to them in violation of the Assignment Act. Ind. Code §§ 22-2-7-7 and 22-2-7-8. Therefore, rather than being able to recover damages, Plaintiffs would actually be negatively affected if Celadon was

found to have violated Section 2. For these reasons, summary judgment in favor of Celadon on Plaintiffs' Section 2 claim is appropriate.

## B. THE DEDUCTION ACT

Similarly, it is unlikely that the Legislature intended to confer an implied private right of action in the Deduction Act. The Deduction Act defines an assignment of wages as "any direction given by an employee to an employer to make a deduction from the wages to be earned by said employee." Ind. Code § 22-2-6-1. The Deduction Act further states that an assignment must be (1) "in writing"; (2) "signed by the employee personally"; (3) "by its terms revocable at any time by the employee upon written notice to the employer"; and (4) "agreed to in writing by the employer" to be valid. Ind. Code § 22-2-6-2. However, the Deduction Act does not include any specific remedy for an employer's deduction of wages that does not meet the conditions for a valid assignment.

In contrast, the Payment Statute requires that an employer doing business in Indiana must "pay each employee at least semimonthly or biweekly, if requested, the amount due the employee" and must pay "all wages earned [by each employee] to date not more than ten (10) business dates prior to the date of payment." Ind. Code § 22-2-5-1. The Payment Statute also states that if an employer "fail[s] to make payment of wages to any such employee," the employer "shall be liable to the employee for the amount of unpaid wages." Ind. Code § 22-2-5-2. As the Indiana Supreme Court concluded, "the plain, ordinary, and usual meaning of the phrases 'all wages' and 'amount due' [within Ind. Code § 22-2-5-1] unambiguously establishes that the legislature intended the [Payment Statute] to govern not only the frequency but also the amount an employer must pay its employee." *St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699,

704 (Ind. 2002). *See also, GHPE Holdings, LLC v. Huxley*, 69 N.E.3d 513, 518-19 (Ind. Ct. App. 2017) ("The [Payment Statute] governs both the frequency and the amount an employer must pay its employee. In other words, an employer cannot avoid the penalty provisions of the [Payment Statute] by paying its employee an amount less than that agreed to by the parties.") (internal citations omitted). Therefore, Celadon's allegedly improper deductions from Plaintiffs' wages can be enforced under the Payment Statute to ensure that Plaintiffs receive the full amount of wages owed to them.

Because the Legislature explicitly provided a private right of action in the Payment Statute for employees to recover amounts of wages owed to them, and because it chose not to include such an explicit private right of action in the Deduction Act, the Legislature likely did not intend for a separate private right of action to exist under the Deduction Act to recover amounts improperly deducted from employees' wages. For this reason, summary judgment in favor of Celadon is also appropriate on Plaintiffs' claim under the Deduction Act.

## IV. **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** summary judgment to Celadon on Plaintiffs' claims under the Indiana Wage Deduction Act, Ind. Code §§ 22-2-5-1 *et seq.*, and Section 2 of the Indiana Wage Assignment Act, Ind. Code § 22-2-7-2, in their Second Amended Complaint.

IT IS SO ORDERED this 14th day of August, 2017.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

Distribution:

Adam C. Smedstad
SCOPELITIS GARVIN LIGHT HANSEN & FEARY P.C.
asmedstad@scopelitis.com

Christopher C. Heery
SCOPELITIS GARVIN LIGHT HANSON & FEARY P.C.
cheery@scopelitis.com

Adam Eakman
SCOPELITIS GARVIN LIGHT HANSON & FEARY PC
aeakman@scopelitis.com

Braden Kenneth Core
SCOPELITIS GARVIN LIGHT HANSON & FEARY PC
bcore@scopelitis.com

Christopher J. Eckhart
SCOPELITIS GARVIN LIGHT HANSON & FEARY PC
ceckhart@scopelitis.com

Gregory M. Feary
SCOPELITIS GARVIN LIGHT HANSON & FEARY PC
gfeary@scopelitis.com

Justin L Swidler
SWARTZ SWIDLER
jswidler@swartz-legal.com

Matthew D. Miller
SWARTZ SWIDLER
mmiller@swartz-legal.com

Richard S. Swartz
SWARTZ SWIDLER LLC
rswartz@swartz-legal.com

Joshua Samuel Boyette
SWARTZ SWIDLER, LLC
jboyette@swartz-legal.com